IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARLENE ANDUHA, | ) | CRIM. NO. 21-00141 SOM |
| | ) | |
| Petitioner, | ) | ORDER DENYING MOTION |
| | ) | REQUESTING REDUCTION OF |
| vs. | ) | SENTENCE PURSUANT TO 18 U.S.C. |
| | ) | § 3582(c)(1)(A)(i) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION REQUESTING REDUCTION OF
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

**I.      INTRODUCTION.**

Marlene Anduha, age 69, is serving a 70-month prison sentence, having pled guilty pursuant to a plea agreement of having conspired to distribute methamphetamine.  She was held responsible for just over 1 kilogram of methamphetamine.

In a motion filed on September 23, 2024, Anduha seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Because Anduha does not establish "extraordinary and compelling reasons" justifying her early release or that the 18 U.S.C. § 3553 factors weigh in favor of her release, the court denies her motion.

**II.      BACKGROUND.**

Anduha was charged in a felony Information with having conspired to distribute and possess with intent to distribute 50

grams or more of methamphetamine, its salts, isomers, and salts of its isomers (Count 1).  *See* ECF No. 19.

On December 1, 2021, Anduha pled guilty to Count 1 of the Information pursuant to a plea agreement.  *See* ECF Nos. 22-23.

A Presentence Investigation Report ("PSR") was prepared to aid the court in sentencing Anduha.  *See* ECF No. 34.  The court adopted the PSR without change.  *See* ECF No. 38, PageID # 177.  Anduha was found responsible for 1.07 kilograms of actual methamphetamine.  *See* ECF No. 24, PageID # 128.  Applying the 2021 U.S. Sentencing Commission Guidelines Manual ("U.S.S.G."), this court determined that Anduha had a base offense level of 34 under U.S.S.G § 2D1.1(c)(3), given the amount of drugs involved. Three levels were subtracted from Anduha's base offense level given her early acceptance of responsibility, resulting in a Total Offense Level of 31.  *See* ECF No. 34, PageID #s 128-29.

Anduha had a lengthy criminal history, beginning when she was 25.  However, she received only 6 points arising out of drug convictions in 2007 and 2008.  This placed her in Criminal History Category III.  *See* ECF No. 34, PageID #s 129-34.

With a Total Offense Level of 31 and a Criminal History Category of III, Anduha had a guideline range of 135 to 168 months of imprisonment.  *See* ECF No. 34, PageID # 142; U.S.S.G. Sentencing Table (2021).

On September 15, 2022, this court sentenced Anduha to a below-guideline term of 70 months in prison and five years of supervised release. *See* ECF Nos. 36-37. Anduha is currently incarcerated at Bryan FPC and has a projected release date of March 14, 2026, taking anticipated good-time and First Step Act credit into account. *See* https://www.bop.gov/inmateloc/ (input Register No. 10421-022) (last visited December 2, 2024). She has been in custody since her arrest in October 2021, meaning that she has served approximately 37 months of her sentence, or about 53 percent of the 70-month term of imprisonment that this court imposed.

At 69 years old, Anduha has numerous medical conditions, including hypertension, hyperlipidemia, back and shoulder pain, knee osteoarthritis, obesity, osteoporosis, urinary incontinence, hepatitis, and sleep apnea. *See* ECF No. 51. She says she also has chronic respiratory issues. *See* ECF No. 39, PageID # 181. Many of these conditions developed during Anduha's imprisonment. Her medical records, ECF No. 51, establish that she is receiving medical care for her conditions, despite her complaint that her facility lacks a medical doctor. *See* ECF No. 39.

III.    **ANALYSIS.**

Anduha's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons
> warrant such a reduction . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

This means that, before exercising its authority under

§ 3582(c)(1)(A), the court must determine that a defendant has

exhausted his or her administrative remedies or that 30 days have

passed since he or she filed an administrative compassionate

relief request.

If a defendant satisfies the exhaustion requirement,

then the court may exercise its discretion only after examining

three considerations.  First, it must find that "extraordinary

and compelling reasons" warrant a sentence reduction.  Second, it

must find that such a reduction is consistent with the Sentencing

Commission's policy statements.  Third, it must consider and

weigh the factors set forth in 18 U.S.C. § 3553(a) to determine

under the particular circumstances presented whether the

requested reduction in sentence is warranted.  *See United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022); *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

"Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *Wright*, 46 F.4th at 945.

The Government concedes that Anduha exhausted her prison remedies as required by 18 U.S.C. § 3582(c)(1)(A).  *See* ECF No. 52, PageID # 253 n.1 ("the United States does not dispute that the defendant has exhausted her administrative remedies as required under  § 3582(c)(1)(A)").  The court therefore turns to the merits of her request.

Anduha contends that five circumstances are "extraordinary and compelling" such that a reduction in her sentence is appropriate: (1) her age and time served; (2) Bryan FPC's use of forever chemicals; (3) her mental and physical health; (4) a disproportionate sentence compared to other defendants; and (5) the lack of a halfway house in Hawaii.  None of these circumstances, whether alone or collectively, is "extraordinary and compelling."

5

**A.    Anduha's Age and the Percentage of Her Prison Term That She Has Served Are Insufficient to Justify Compassionate Release.**

The applicable U.S.S.G. policy statement defines "extraordinary and compelling reasons" to include circumstances when a defendant is at least 65 years old, is experiencing serious deterioration of her physical or mental health due to the aging process, and "has served . . . 75 percent of . . . her term of imprisonment."  U.S.S.G. § 1B1.13(b)(2).  This court addresses Anduha's physical and mental health later in this order, dealing first with the issue of whether she has served 75 percent of her "term of imprisonment."

Anduha, now 69, meets the policy statement's age requirement of being at least 65 years old.  She contends that she has served 75 percent of her "term of imprisonment."  The 37 months that Anduha has served equate to about 53 percent of the 70-month term of imprisonment imposed by this court.

Anduha asks the court to focus on her projected release date and to calculate 75 percent of the period from when her imprisonment began and that projected release date.  Assuming Anduha earns the maximum amount of good-time credit, and taking into account credit she has earned pursuant to the First Step Act, the Bureau of Prisons projects an early release on March 14, 2026.  If released on March 14, 2026, Anduha, having been in custody since her arrest in October 2021, will have served about

6

53 months in prison.  She asks to be released sooner than March 14, 2026, because she will soon have served 75 percent of 53 months.  To use 70 months, she argues, would mean she would never actually satisfy the 75 percent provision before being released given good-time and First Step Act credit.  *See* ECF No. 53, PageID # 265.  This argument is unpersuasive.

First, it assumes that Anduha will receive good time credit in the future.  A prisoner serving a term of imprisonment of more than a year (but not a prisoner serving a life sentence) may receive credit toward his or her sentence of up to 54 days (15 percent) at the end of each year if the Bureau of Prisons determines that the prisoner "has displayed exemplary compliance with institutional disciplinary regulations."  18 U.S.C. § 3624(b)(1).  When the Bureau of Prisons has determined that a prisoner has not displayed "exemplary compliance with institutional disciplinary regulations," it may grant a prisoner partial or no good-time credit.  *Id.*  In other words, the Bureau of Prisons is charged with determining whether and to what extent Anduha qualifies for good-time credit with respect to time served "during that year."  While Anduha has a projected release date of March 14, 2026, she will only be released on that date if the Bureau of Prisons decides that she qualifies for good-time credit for this entire year and for what remains of her sentence.  If the Sentencing Commission had in mind this potentially moving

7

release date when it referred to 75 percent of a "term of imprisonment," it would have been asking district judges to make impossible determinations as to when defendants have served 75 percent of their "terms of imprisonment."  The Bureau of Prisons makes that determination and, in this case, is only projecting a release date for Anduha, not at this time actually determining her release date.

Second, the Sentencing Commission could have easily defined "term of imprisonment" to include a good-time and First Step Act credit analysis if that is what it meant.  It did not.  The official commentary to the amendments to U.S.S.G. 1B1.13 also lacks any discussion of what the Sentencing Commission meant when it referred to "term of imprisonment."  *See* https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.  Reading "term of imprisonment" consistently with how the Sentencing Commission uses the term in other parts of its guideline manual supports interpreting the term to mean 70 months in Anduha's case.  For example, U.S.S.G. § 1B1.10 discusses the reduction of a "term of imprisonment" when there is an amended guideline range.  In determining whether to reduce a "term of imprisonment" in light of a new guideline range, a court is to examine the effect of the amended guideline range as if it had been in effect at the time the defendant was sentenced.  *See* U.S.S.G. § 1B1.10(b)(1).  In

other words, the Sentencing Commission charges a court with comparing the "term of imprisonment" that the court actually imposed with what the "term of imprisonment" would be under the amended guidelines.  There is no discussion about how good-time or First Step Act credit might affect the length of a defendant's sentence, only an examination of the "term of imprisonment" imposed by the court.

Anduha's proposed interpretation of "term of imprisonment" would also be inconsistent with the Sentencing Commission's use of "term of imprisonment" in other parts of U.S.S.G. § 1B1.13.  For example, pursuant to U.S.S.G. § 1B1.13(a), this court may grant compassionate release and reduce a "term of imprisonment" and "impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."  In other words, the Sentencing Commission draws a difference between the served and "unserved portion" of a "term of imprisonment."  Anduha is asking this court to conflate that distinction.

Third, Anduha cites no authority supporting her contention that this court should calculate 75 percent of her "term of imprisonment" by subtracting her good-time credit from the sentenced imposed by this court and then multiplying that amount by 0.75.

Fourth, the court questions Anduha's statement that she can never actually serve 75 percent of her sentence before being released with good-time and First Step Act credit. Under 18 U.S.C. § 3624(b)(1), a defendant may receive up to 15 percent off of a sentence. U.S.S.G. 1B1.13(b)(2) allows a defendant to seek compassionate release when the defendant has served 75 percent of his or her sentence when he or she is 65 years old or older and is experiencing a serious deterioration of his or her physical or mental health regardless of the Bureau of Prison's determination of the defendant's eligibility for good-time and First Step Act credit. Even if the Bureau of Prisons grants a defendant the maximum good-time credit of 15 percent, meaning that the defendant will have served 85 percent of the sentence imposed, a defendant who has served 75 percent of the sentence imposed by a court and who satisfies other conditions of compassionate release could be released sooner than upon having served 85 percent of the court-imposed term. The court recognizes that the Bureau of Prisons also calculates First Step Act credits, but that does not mean that defendants can never benefit from the 75 percent provision.

Even if 75 percent of the term imposed by a court were to end up being the same amount of prison time served by a younger defendant with less good-time credit, that other person might not have had the benefit of classes Anduha benefitted from,

10

or might have suffered disciplinary sanctions.  That is, just because Anduha cannot "stack" the 75 percent provision with other credits to further shorten her sentence does not constitute an "extraordinary or compelling reason" to release her now.

> **B.   The Alleged Use of Forever Chemicals and the Supposed Existence of Mold and Asbestos at Bryan FPC Does Not Justify Compassionate Release.**

Anduha claims that Bryan FPC has mold and asbestos and that the facility uses forever chemicals.  She says that this causes her to suffer breathing problems, mental confusion, and coughing spasms.  Anduha notes that she is not bringing a "condition of confinement" claim, but is instead contending that the conditions may be considered in determining whether compassionate release is appropriate.  *See* ECF No. 39, PageID # 181.  Anduha's references to general conditions at her facility such as use of chemicals and the existence of mold and asbestos do not establish "extraordinary and compelling reasons" warranting compassionate release.

Anduha fails to establish that she has been physically affected by her prison's alleged use of forever chemicals or by mold and asbestos.  *See United States v. Burd*, 2023 WL 3271167, at *4 n.7 (D.N.J. May 5, 2023).  She offers no facts supporting her claim that Bryan FPC is unsafe or that she is actually being exposed to harmful conditions.  Her medical records do not show

11

that she has ever complained about mental or physical issues arising out of chemical, mold, or asbestos exposure.

If Anduha is suffering from respiratory or other physical or mental issues arising out of chemical, mold, and/or asbestos exposure, she is certainly entitled to medical assistance and her facility's cooperation in protecting against such exposure.  That entitlement does not support compassionate release on the thin record presented here.

This court further notes that a voluntary decision to seek compassionate release rather than to proceed under 28 U.S.C. § 2241 to challenge conditions of confinement does not rise to the level of a sufficient showing of an "extraordinary and compelling reason" for release.

C.    **Anduha's Physical and Mental Health Does Not Justify Compassionate Release Given the Bureau of Prison's Treatment of Her Conditions.**

Anduha argues that she has numerous medical and mental health issues that justify compassionate release.  The applicable policy statements provide several ways physical and mental health may justify compassionate release.  For example, U.S.S.G. § 1B1.13(b)(1)(A) states that an "extraordinary and compelling reason" may justify compassionate release when a defendant is suffering from a terminal illness.  Anduha does not establish that she is suffering from a terminal illness or any other condition not being addressed by her facility.

12

U.S.S.G. § 1B1.13(b)(1)(B) provides that an "extraordinary and compelling reason" may justify compassionate release when a defendant is suffering from a serious physical or medical condition or a serious functional or cognitive impairment, or is experiencing deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Anduha fails to establish that her physical and mental conditions substantially diminish her ability to provide self-care. In fact, Anduha's medical records establish that she is receiving medical care for her conditions. Nothing in the record establishes that her facility's lack of an onsite doctor has affected that ability.

To the contrary, the record establishes that the prison facility has provided medical care to Anduha. For example, a CPAP machine has been ordered for Anduha's sleep apnea. *See* ECF No. 51, PageID # 216. She is receiving medication for urinary incontinence, pain, osteoporosis, hyperlipidemia, and hypertension. *See id.*, PageID #s 221-22. She has restrictions with respect to climbing, lifting, and raising her arms above her head, and has been restricted to the bottom bunk. *See id.*, PageID #s 223, 235. She has also participated in group psychological services. *See id.*, PageID #s 240-41. She has

13

received imaging of her knee and shoulder, as well as imaging with respect to osteoporosis. *See id.*, PageID #s 242-45. Anduha fails to establish that her medical conditions, which are being treated by her prison facility, substantially diminish her ability to provide self-care in her prison facility.

> **D.  No Sentencing Disparity Justifies Compassionate Release.**

Anduha next argues that sentencing disparity with respect to other defendants justifies a reduction in her sentence. This court disagrees.

Anduha argues that, when compared to a person who committed billions of dollars of fraud and received an 11-year sentence, her 70-month sentence is disproportionate. Anduha's attempt to compare her sentence to that of a fraudster is unpersuasive.

Comparing Anduha's sentence to other drug traffickers also fails to establish a disproportionate sentence. For example, according to Table 28 of the 2023 Sourcebook of Federal Sentencing Statistics published by the United States Sentencing Commission, the average sentence for a drug trafficker in Criminal History Category III is 72 months. *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2023/2023_Sourcebook.pdf (last visited November 19, 2024). Anduha was therefore sentenced to less than the average drug trafficker in her criminal history

14

category.  In fact, Anduha's 70-month sentence was substantially
below her guideline range of 135 to 168 months of imprisonment.

     Anduha fails to demonstrate that any unwarranted
sentencing disparity is an "extraordinary and compelling reason"
supporting a reduction of his sentence.

     **E.**    **The Lack of a Halfway House in Hawaii is Not an "Extraordinary and Compelling Reason" Warranting a Reduction of Anduha's Sentence.**

     Anduha complains about the lack of a halfway house in
Hawaii.  *See* ECF No. 39, PageID # 182.  This judge shares
Anduha's disappointment about the lack of a halfway house, but
this is not an "extraordinary and compelling" circumstance
warranting early release.  See *United States v. Phillips*, 2021 WL
149675, at *1, *3-4 (D. Haw. Jan. 15, 2021) (ruling that the lack
of a halfway house in the District of Hawaii is not an
"extraordinary and compelling reason" justifying release under 18
U.S.C. § 3582(c)(1)(A)).  This district's Probation Office has
been working hard to address the absence of a halfway house, in
the meantime working with other forms of residential arrangements
for individuals on supervised release.  This court cannot predict
whether ongoing efforts to remedy the lack of a halfway house in
this district will have borne fruit by Anduha's projected release
date in early 2026.

15

**F.    The Combination of All Factors is Not an
       "Extraordinary and Compelling Reason" Warranting a
       Reduction of Anduha's Sentence.**

Anduha argues that the combination of all of the above circumstances justifies her early release under the "other reason" catchall in U.S.S.G. § 1B1.13(b)(5).  The court disagrees.  Even combining the factors discussed above, Anduha fails to show "extraordinary and compelling reasons" justifying a release at this time.

**G.    The § 3553 Factors Do Not Support Anduha's Early
       Release.**

In evaluating whether early release is justified, this court also must consider the factors set forth in § 3553(a).  These factors do not weigh in favor of Anduha's compassionate release request.  While Anduha reports that she has taken classes and worked in her facility, and while there is no dispute that she has been a good inmate, she has only served a little more than half of the sentence that this court determined was appropriate to reflect the seriousness of her conduct, promote respect for the law, punish her, deter criminal conduct, and protect the public.  In sentencing Anduha, this court already substantially departed from her advisory guideline range.  She is essentially asking this court to depart even further based on matters that this court has already taken into account.  On balance, the § 3553 factors do not support her early release.

16

**IV.        CONCLUSION.**

Anduha's motion for compassionate release is DENIED. Anduha's filings ask that, even if the court declines to order her released now, it order her sentence reduced so that, at a future time before her projected release date in March 2026, she can be released early.  That request is denied as not supported by the present record.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 2, 2024.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

*Anduha v. United States,* CRIM. NO. 21-00141 SOM; ORDER DENYING MOTION REQUESTING REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

17